UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Zhi Gang Zhang,                                    File No. 26-cv-760 (ECT/DTS)

          Plaintiff,

v.                                                 **OPINION AND ORDER**

Ling Ma,

          Defendant.

---

Zhi Gang Zhang, pro se.

Brett D. Kelley, Kelley, Wolter & Scott, P.A., Minnetonka, MN, for Defendant Ling Ma.

---

Pro se Plaintiff Zhi Gang Zhang, M.D., filed this suit against his ex-wife, Ling Ma, following two prior South Dakota state court decisions.  The first was a divorce decree in 2011 ordering Dr. Zhang to pay alimony to Ms. Ma, and the second was a dismissal of a 2024 pro se civil suit against Ms. Ma alleging fraud on the court in the 2011 divorce proceedings.  This suit recycles the same general theory from the 2024 case.  There and here, he alleged that Ms. Ma hired a lawyer, the lawyer misrepresented the law and facts, and the court was deceived and entered an erroneous judgment against him.

Ms. Ma moves to dismiss for lack of subject-matter jurisdiction, failure to state a claim, and failure to join a necessary party.  Her motion will be granted partially on jurisdictional grounds, because the complaint seeks to effectively vacate a state-court judgment, an action outside a federal district court's authority.  To the extent the merits are

reached, the complaint will be dismissed with prejudice, as Dr. Zhang's claims are not cognizable or not plausibly alleged, and they cannot conceivably be repleaded with success.

Ms. Ma also moves for sanctions, and that motion will be granted, though not in the manner she requests. She seeks attorney's fees and a filing restriction, but a lesser sanction is sufficient to deter Dr. Zhang's misconduct. While Dr. Zhang's legal arguments are frivolous, they are not precluded by previous litigation, and he has not litigated patently meritless claims at great length. The most appropriate sanction is a formal warning, so he will be cautioned that he must comply with Federal Rule of Civil Procedure 11, and that future misconduct may result in a graduated sanction.

I[1]

Zhi Gang Zhang and Ling Ma divorced in South Dakota in 2011. *See* Compl. [ECF No. 1-1] ¶¶ 2, 26; ECF No. 1-2 at 1–52 (complaint seeking to vacate 2011 divorce decree). As part of the court's divorce decree, Dr. Zhang was required to pay alimony. *See id.* ¶¶ 195, 198. In 2011, Ms. Ma moved to Minnesota, where she still resides, and Dr. Zhang continues to live in South Dakota. *Id.* ¶¶ 1–2, 26(d).

In 2024, Dr. Zhang sued Ms. Ma in the South Dakota Fifth Judicial Circuit Court over the divorce proceedings. *See id.* ¶ 188; ECF No. 1-2 at 1–52 (complaint in *Zhang v.*

---

[1]     In accordance with the standards governing a Rule 12(b)(6) motion and a Rule 12(b)(1) facial attack, the facts are drawn entirely from the Complaint and documents necessarily embraced by the pleadings. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990); *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

*Ma*, Civ. No. 24-534 (S.D. Cir. Ct. filed Sep. 24, 2024)).[2] Dr. Zhang alleged that Ms. Ma's counsel, Harvey Oliver, made false statements to the court about Ms. Ma's financial information, which the judge inappropriately relied on in setting the alimony amount. ECF No. 1-2 at 2–3 ¶¶ 8–14. For relief, Dr. Zhang sought an order to "[v]acate and terminate the judgment of Div. 09-887 [the divorce case] and return all alimony obtained through fraud on the court." *Id.* at 50. Ms. Ma filed a motion to dismiss the complaint through her counsel, Mitchell L. Koehn. *Id.* at 58–77 (brief in support of motion to dismiss). Judge Richard Sommers granted the motion and dismissed the complaint on the grounds that subject-matter jurisdiction and personal jurisdiction were lacking, and that the statute of limitations barred the claims. ECF No. 19-1 at 54. He also found the complaint frivolous and ordered Dr. Zhang to pay Ms. Ma's costs and attorneys' fees. *Id.* at 55. The South Dakota Supreme Court summarily affirmed. *Zhang v. Ma*, 26 N.W.3d 346 (S.D. 2025) (unpublished table decision).

Dr. Zhang now sues Ms. Ma over the 2024 divorce litigation. Though Ms. Ma is the only defendant, the allegations focus on the conduct of Mr. Koehn and Judge Sommers. Mr. Koehn "deliberately avoided discussing" the South Dakota statute governing relief from a judgment, Compl. ¶¶ 11, 71; represented that Ms. Ma did not travel to South Dakota, despite her "[a]irline tickets and travel receipts" to the state over the relevant time period, *id.* ¶ 26(g); did not cite certain cases during advocacy, *id.* ¶ 48; and informed Judge Sommers that Dr. Zhang had tried to modify or stop alimony payments six times, though

---

[2]     Page citations are to a document's CM/ECF pagination appearing in the upper right corner, not to a document's original pagination.

Judge Sommers confirmed at the hearing that Dr. Zhang had not done so, *id.* ¶¶ 55–56, 90, 134, 164.  Judge Sommers "did not allow [Dr. Zhang] to explain or quote from his own complaint during the dismissal hearing," *id.* ¶ 17; *accord id.* ¶ 132; and he "did not announce the rules and how the proceeding was to be conducted," *id.* ¶ 127.  Mr. Koehn drafted a proposed order, which Judge Sommers adopted, finding no subject-matter jurisdiction, *id.* ¶¶ 47, 85, 152, and deeming Dr. Zhang's action to be frivolous, *id.* ¶ 77.  Ms. Ma was "direct[ly] involve[d]" and "approv[ed]" of Mr. Koehn's litigation strategies, and she was "adamant that Zhang brought this action with malicious intent." *Id.* ¶ 23.  Dr. Zhang's damages are that he was ordered to pay Ms. Ma's attorney's fees, *id.* ¶¶ 190, 211; past and future alimony payments, *id.* ¶¶ 198, 211; court fees for litigating the 2024 action, *id.* ¶ 211; and he suffered unspecified "[e]arning capacity loss" and "[p]roduction [l]oss," *id.*; mental anguish that tracks his lost earning capacity, *id.* ¶ 221.  He also seeks punitive damages, *id.* ¶ 222.[3]

Dr. Zhang asserts four causes of action: (1) "Fraud on the Court; (2) "Intentional Tort"; (3) "Abuse of Process"; and (4) "Collusion with State Officer to Violate Constitutional Rights." *Id.* ¶¶ 61–176.  He advances a principal-agent theory of liability in

---

[3]     Though in a Rule 12(b)(6) posture courts must accept well-pleaded allegations as true, that principle does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Many of Dr. Zhang's allegations are legal conclusions and will not be accepted here. *See, e.g.*, Compl. ¶ 27 (alleging that Mr. Koehn "disregarded the law, including basic law principles of specific jurisdiction relevant to the complaint"); *id.* ¶ 34 (alleging that Mr. Koehn misapplied the law of agency); *id.* ¶ 53 (alleging that case law contradicted Mr. Koehn's position); *id.* ¶ 186 (alleging that Mr. Koehn and Judge Sommers "altered the applicability" of a South Dakota statute).

4

which Ms. Ma is vicariously liable for Mr. Koehn's conduct in the 2024 proceedings. *Id.*

¶¶ 187–88.  Dr. Zhang seeks the following relief:

> A. Return of all alimony obtained through fraud on the court.
> B. Judgment for money damages for all unnecessary expenditures during and after Div. 09-887 [the divorce case], against Defendant Ling Ma, with such other and further relief as the Court may deem reasonable and just under the circumstances.
> C. Compensation for the mental suffering and anguish endured by the plaintiff as a result of, and in connection with the fraud on the court.
> D. Compensation in the form of Punitive Damages.
> E. All fees and related costs incurred in this action.
> F. Denounce the alimony order and voluntarily to terminate it [sic] in the South Dakota court.  Alternatively, require repayment of all future alimony payments, with a proportionate amount of punitive damages added, given the alimony was obtained through fraud on the court from the outset, and lacks any lawful basis.[4]
> G. Total Claim Value 2,522,366.08 + Punitive damages, decided by this court under the circumstances, plaintiff requesting nine times the claim value, in line with the federal court allowed reasonable punitive damages range.

*Id.* at 43–44.

Ms. Ma seeks dismissal of Dr. Zhang's claims under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7) for lack of subject-matter jurisdiction, failure to state a claim, and failure to join a necessary party.  ECF No. 18 at 2.  Specifically, Ms. Ma argues that Dr. Zhang's claims are barred by the *Rooker-Feldman* doctrine, the domestic

---

[4]    Dr. Zhang recognizes a "federal court would face difficulty vacating a state court order on an alimony-related issue due to the limitations inherent in federal court jurisdiction" and "proposes that the defendant renounce the order and voluntarily cease enforcement of the alimony obligation" or else "that the defendant be required to repay every future alimony payment, with additional punitive damages applied to each payment, contingent upon the plaintiff's success on his current claim(s)."  Compl. ¶¶ 208–10.

relations exception to federal jurisdiction, the South Dakota statute of limitations, res judicata, and collateral estoppel. *Id.* Ms. Ma further contends that Dr. Zhang's fraud allegations fail Rule 9(b)'s heightened pleading requirements and that "[t]here are no legally cognizable claims pleaded against Defendant, which warrants dismissal." *Id.* at 18.[5]

## II

Both the jurisdictional and merits arguments of Ms. Ma's motion to dismiss are evaluated under the Rule 12(b)(6) standards.[6] The jurisdictional challenge is brought under Rule 12(b)(1), and Ms. Ma challenges the complaint's sufficiency and relies on materials embraced by the pleadings, making it a facial challenge to subject-matter jurisdiction. *See Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015). In analyzing a facial challenge, a court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citation modified).

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept a complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792

---

[5]   Dr. Zhang has filed a Motion to Oppose Dismissal Motion. ECF No. 26. It is captioned and filed as a motion, but it is really a notice of his opposition to Ms. Ma's motion to dismiss. *See id.* It will be denied.

[6]   It is not necessary to address the Rule 12(b)(7) argument because dismissal is justified on other grounds.

(8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Courts are "not strictly limited to the four corners of complaints," but may consider other matters, including "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[] without converting the motion into one for summary judgment." *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (citation modified).

Because Dr. Zhang is pro se, his complaint is entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[H]owever inartfully pleaded," pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson*, 551 U.S. at 94). "[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)). However, the liberal-construction rule does not

excuse a pro se plaintiff from alleging sufficient facts to support his claims. *Stone*, 364 F.3d at 914. Nor are pro se litigants "excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (per curiam).

A

1

Two settled legal principles deprive this Court of jurisdiction over part of the complaint. The first is the *Rooker-Feldman* doctrine, which "precludes lower federal courts from exercising jurisdiction over actions seeking review of, or relief from, state court judgments." *Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016). As the Supreme Court recently explained, the doctrine springs from "two closely related bases of reasoning": that "review[ing] and revers[ing] unfavorable state-court judgments" is "an exercise of appellate jurisdiction," and that such appellate jurisdiction is "lodged" "exclusively" in the Supreme Court. *T.M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S. ---, 146 S. Ct. 1739, 1747 (2026) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005)); *see* 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States . . . ."); 28 U.S.C. § 1331 (granting district courts original jurisdiction to hear federal question cases, but not appellate jurisdiction). The *Rooker-Feldman* doctrine prevents federal courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings

8

commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284; *see Lance v. Dennis*, 546 U.S. 459, 466 (2006) (per curiam) (stating doctrine applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court").

The doctrine is "limited in scope and does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings." *Hageman*, 817 F.3d at 614 (citing *Exxon Mobil*, 544 U.S. at 293). As the Eighth Circuit has explained,

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008) (quoting *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008)). Under the *Exxon Mobil* test, it is not enough for an injury to be caused by a state-court judgment; the complaint must also seek review and rejection of that judgment in the district court. 544 U.S. at 284; *see MSK EyEs Ltd.*, 546 F.3d at 539 ("Although Appellants complain of injuries caused by the state court judgment, their claims do not seek review and rejection of that judgment."); *Hageman*, 817 F.3d at 614 ("The boundaries for application of the doctrine depend upon the nature of the federal claims and whether the plaintiff in federal court, in fact, seeks relief from the state court judgment."). If the "federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the

defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 293 (citation modified); *see Kvalvog v. Park Christian School, Inc.*, No. 21-cv-1569 (ECT/LIB), 2022 WL 119010, at *3 (D. Minn. Jan. 12, 2022) (finding plaintiffs bypassed *Rooker-Feldman* where their sought-after relief "would not invite or require rejection of the state courts' judgments"), *aff'd*, 66 F.4th 1147 (8th Cir. 2023). Determining whether an action is barred by *Rooker-Feldman* can be difficult, as the doctrine's scope, "even as narrowly described in *Exxon Mobil*, is sometimes fuzzy on the margins." *In re Athens/Alpha Gas Corp.*, 715 F.3d 230, 234 (8th Cir. 2013).

The complaint seeks review and rejection of the 2011 alimony order, and to the extent it does so, *Rooker-Feldman* bars jurisdiction. *See Corrigan v. Scott County*, No. 24-cv-4523 (ECT/DTS), 2025 WL 1866292, at *6 (D. Minn. July 7, 2025) (finding that *Rooker-Feldman* deprived the court of jurisdiction "to the extent" the complaint requested relief from prior state-court judgments). Dr. Zhang's basic theory is that he was injured by erroneous state-court judgments. He alleges the legal conclusion that Mr. Koehn's "disregard for the facts and the law" was deceptive, and it "led the court to improperly dismiss the plaintiff's rightful lawsuit." Compl. ¶ 70. Mr. Koehn's proposed order characterized the complaint as frivolous, and Dr. Zhang believes Judge Sommers adopted that language uncritically. *Id.* ¶¶ 77–79, 109. Dr. Zhang also alleges that Judge Sommers "simply disregard[ed]" his filings and did not conduct a "merits review of the complaint." *Id.* ¶¶ 125, 129. As he sees it, Judge Sommers "rel[ied] solely" on Mr. Koehn's filings "without verifying the facts, applicable law, or the complaint's content," so he "issued rulings based on a fictitious case full of deficiencies manufactured by [Mr. Koehn]." *Id.*

10

¶ 137. In short, he contends that Mr. Koehn's "creation of a fictitious case and the court's uncritical acceptance of a legal professional's incorrect input" led to "the dismissal of a properly filed case without legitimate basis." *Id.* ¶ 168. His prayer for relief confirms that, at least in part, he seeks to effectively vacate the 2011 order (and the 2024 and 2025 decisions by extension). He seeks "all alimony obtained through fraud on the court" be returned, and that Ms. Ma "[d]enounce the alimony order and voluntarily . . . terminate it in the South Dakota court" or, alternatively, for an injunction requiring her to repay "all future alimony payments." *Id.* at 43–44.[7] An order that Ms. Ma denounce the 2011 alimony order is effectively an order vacating a state-court judgment. Though Dr. Zhang recognizes that a federal district court "would face difficulty vacating a state court order on an alimony-related issue due to the limitations inherent in federal court jurisdiction," *id.* ¶ 208, his proposed workaround fails for the same reason. I do not understand how a federal district court could order Ms. Ma to "cease enforcement of the alimony obligation" entered by the state court. *Id.* ¶ 209. I read this to request an order enjoining Ms. Ma from enforcing the divorce decree, which places the Complaint within "the narrow ground occupied by *Rooker-Feldman*." *T.M.*, 146 S. Ct. at 1748 (quoting *Exxon Mobil*, 544 U.S.

---

[7]    In his opposition brief, Dr. Zhang insists that his prayer for relief "did not seek to modify alimony or directly target it," but rather used the term "alimony" "as a gauge for calculating compensation for tort damages." ECF No. 27 at 25. However, "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Al-Saadoon v. Barr*, 973 F.3d 794, 805 (8th Cir. 2020) (quoting *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)). This rule applies to pro se litigants, who are "not excused from failing to comply with substantive and procedural law." *Burgs*, 745 F.2d at 528. Amending a complaint requires filing a motion under Rule 15; reframing the prayer for relief in an opposition brief is not enough.

at 284); *Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d 1156, 1163 (D. Minn. 2013) ("To the extent Plaintiffs seek to avoid *Rooker-Feldman* by asking this Court to order Defendants themselves to take steps to vacate the state-court judgments, the Court rejects that subterfuge.").

Elsewhere in his complaint, Dr. Zhang does not seek review and rejection of a state-court judgment, and to that extent the claims are not barred by *Rooker-Feldman*. His prayer for relief also requests monetary damages, compensation for mental suffering, and punitive damages. Compl. at 44. Additionally, he describes other theories of injury—he suffered "financial burdens" because of Mr. Koehn's "unprofessional conduct," *id.* ¶ 194, and "severe depression" because this process has led him to doubt the fairness of the court system, *id.* ¶ 215. Compensating him for these alleged injuries would not require reviewing and rejecting the decisions of the South Dakota courts.

2

Federal jurisdiction is also partially lacking because of the domestic relations exception.[8] That doctrine "divests the federal courts of power to issue divorce, alimony,

---

[8]     There is a wrinkle here, though it is ultimately academic. Some courts have applied the domestic relations exception to diversity jurisdiction only, while others apply it to federal question jurisdiction too. *See* 13E *Wright & Miller's Federal Practice & Procedure* § 3609 & nn.3–4 (3d ed. 2009 & Apr. 2026 Update). Intracircuit splits also exist. *See* Note, Bradley G. Silverman, *Federal Questions and the Domestic-Relations Exception*, 125 Yale L.J. 1364, 1381–86 (2016). Pre-*Ankenbrandt*, the Eighth Circuit noted it was "unclear whether the domestic-relations exception applies to cases brought under the federal-question statute," *Ruffalo ex rel. Ruffalo v. Civiletti*, 702 F.2d 710, 717–18 (8th Cir. 1983), but post-*Ankenbrandt*, it described the Supreme Court's holding as a rule for diversity cases, *United States v. Crawford*, 115 F.3d 1397, 1401 (8th Cir. 1997), even while affirming dismissals of § 1983 suits under the exception, *see Davison v. Arkansas*, 989 F.2d 504 (8th Cir. 1993) (per curiam) (unpublished table decision); *Sturgeon v. Benton*, 242 F.3d

and child custody decrees." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)).   Federal suits are "'inextricably intertwined' with a state domestic proceeding, thereby depriving the federal court of subject matter jurisdiction, where the requested federal remedy overlaps the remedy at issue in the state proceeding." *Wallace v. Wallace*, 736 F.3d 764, 767 (8th Cir. 2013) (quoting *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994)).  Put another way, a federal suit is inextricably intertwined with a state domestic proceeding when the former "involves a remedy which is essentially domestic—where, in addressing the same conduct involved in a state domestic proceeding, the effect of a remedy in the federal suit is to modify, nullify, or predetermine the domestic ruling of the state proceeding." *Id.*  If granted, the requested relief "would undermine the judgment of the state court," at least in part.  *Id.* Additionally, in some limited cases "involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody," a federal court should abstain from exercising jurisdiction.  *Ankenbrandt*, 504 U.S. at 705.  "This would be so when a case presents 'difficult questions of state law bearing on policy problems of

---

376 (8th Cir. 2000) (per curiam) (unpublished table opinion); *Smith v. Huckabee*, 154 F. App'x 552, 555 (8th Cir. 2005) (per curiam).

Here, Dr. Zhang asserts both diversity and federal question jurisdiction.  ECF No. 1 ¶ 3.  He identifies 42 U.S.C. § 1983 as the jurisdiction-grounding statute.  ECF No. 1 ¶ 4. As to diversity, he alleges that he is a citizen of South Dakota, and Ms. Ma. is a citizen of Minnesota.  ECF No. 1 ¶ 5.  Dr. Zhang seeks north of $34 million in damages, ECF No. 6-1 at 2, well beyond the statute's $75,000 threshold.  *See* 28 U.S.C. § 1332(a).

It is not necessary to resolve this issue, because the Eighth Circuit instructs courts to focus on the nature of the remedy sought.  *See Wallace v. Wallace*, 736 F.3d 764, 767 (8th Cir. 2013).  Dr. Zhang requests an order undermining the 2011 divorce decree, and to that extent the domestic relations exception will apply.  Even if the exception does not deprive jurisdiction over the § 1983 claims, the *Rooker-Feldman* doctrine does.

substantial public import whose importance transcends the result in the case then at bar.'" *Id.* at 705–06 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).

To the extent Dr. Zhang seeks to effectively vacate the alimony award, this federal suit is inextricably intertwined with the South Dakota domestic proceedings, and there is no jurisdiction. The 2011 and 2024 suits were state domestic proceedings. In 2011, the court entered the divorce decree and ordered alimony payments. In 2024, the court dismissed his suit seeking relief from the 2011 judgment. Here, while Dr. Zhang frames his action as one for fraud on the court, intentional tort, abuse of process, and collusion, his relief seeks to effectively undermine the divorce decree. He seeks an order requiring Ms. Ma to "[d]enounce the alimony order and voluntarily . . . terminate it in the South Dakota court." Compl. at 44. In the alternative, he asks for "repayment of all future alimony payments." *Id.* The "effect of [that] remedy" is to "nullify" the alimony obligation of the state-court judgment. *Wallace*, 736 F.3d at 767.

Dr. Zhang's attempt to distinguish this case law is unpersuasive. He argues that the domestic relations exception does not apply because "[t]he action seeks compensation for Attorney Koehn's civil liability arising from his SDCL 16-18-26 misdemeanor offense and his other torts." ECF No. 27 at 23. The cited statute makes an attorney "guilty of a Class 2 misdemeanor" if he "[p]ractices any deceit or collusion, or consents to the same with intent to deceive the court or any party." S.D. Codified Laws § 16-18-26. Dr. Zhang did not cite this statute in his complaint, and he does not explain how a criminal provision about lawyers' conduct leads to civil liability for their clients.

14

Nevertheless, as with *Rooker-Feldman*, to the extent that Dr. Zhang seeks compensation for damages for Mr. Koehn's conduct during the 2024 proceedings, the domestic relations exception is no bar. That relief would not require a federal court to reject a state court's domestic judgment. *See Wallace*, 736 F.3d at 767. Insofar as it seeks to effectively undermine state-court judgments, the complaint will be dismissed without prejudice for lack of subject-matter jurisdiction. *See Hart v. United States*, 630 F.3d 1085, 1091 (8th Cir. 2011) (modifying district court's dismissal for lack of subject-matter jurisdiction to be without prejudice).

B

Ms. Ma argues that Dr. Zhang's action is barred by issue and claim preclusion. ECF No. 18 at 14–17. I disagree.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *see* 28 U.S.C. § 1738 (requiring federal courts to give "full faith and credit" to the "records and judicial proceedings" of state courts). Res judicata is an affirmative defense that a defendant must plead and prove, but a court may nonetheless dismiss an action on this basis under Rule 12(b)(6) if the complaint (including public records and documents it embraces) establishes that the plaintiff's claims are precluded. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763–64 (8th Cir. 2012). "The law of the forum that rendered the first judgment controls the res judicata analysis." *Id.* at 764 (citation modified).

15

South Dakota distinguishes between the two principles, but it applies the same elements for each: "(1) the issue in the prior adjudication must be identical to the present issue, (2) there must have been a final judgment on the merits in the previous case, (3) the parties in the two actions must be the same or in privity, and (4) there must have been a full and fair opportunity to litigate the issues in the prior adjudication." *Healy v. Fox*, 572 F. Supp. 3d 730, 739–40 (D.S.D. 2021) (quoting *Dakota, Minn. & E. R.R. v. Acuity*, 720 N.W.2d 655, 661 (S.D. 2006)), *aff'd*, 46 F.4th 739 (8th Cir. 2022). The doctrines differ in their scope and focus:

> Claim preclusion forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit, while issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.

*Id.* at 739 (citation modified). Claim preclusion is broader than issue preclusion in the sense that it forecloses claims that "could have been properly raised" but were not actually litigated. *Nelson v. Hawkeye Sec. Ins. Co.*, 369 N.W.2d 379, 381 (S.D. 1985) (quoting *Black Hills Jewelry Mfg. Co. v. Felco Jewel Indus., Inc.*, 336 N.W.2d 153, 157 (S.D. 1983)); *accord Healy Ranch, Inc. v. Healy*, 978 N.W.2d 786, 798 (S.D. 2022). "If the claims arose out of a single act or dispute and one claim has been brought to a final judgment, then all other claims arising out of that same act or dispute are barred." *Healy Ranch, Inc.*, 978 N.W.2d at 799 (quoting *Farmer v. S.D. Dep't of Revenue & Regul.*, 781 N.W.2d 655, 660 (S.D. 2010)).

Here, elements one and four are not met.  The previous case was a suit between Dr. Zhang and Ms. Ma over Mr. Oliver's conduct in the 2011 divorce proceedings.  *See* ECF No. 1-2 at 1 ("This Lawsuit is related with Fraud on the Court and collusions occurred in Div. 09-887 [the divorce case].").  That complaint alleged that Mr. Oliver submitted incorrect financial records, which Judge Jack Von Wald relied on to grant an alimony award to Ms. Ma.  *See id.* at 3–20.  Dr. Zhang asserted claims for fraud on the court and violations of the Due Process Clause and Equal Protection Clause, among others.  *Id.* at 27–38.  Judge Sommers dismissed the complaint, finding that there was no subject-matter jurisdiction or personal jurisdiction, that the claims were barred by the statute of limitations, and the complaint was frivolous.  ECF No. 19-1 at 54–55.  Here, the allegations against Ms. Ma are different.  Dr. Zhang alleges that Ms. Ma committed fraud on the court (and other related torts) through Mr. Koehn's actions in the 2024 proceedings.  That issue is not "identical" to any issue in the 2011 case, so issue preclusion does not apply.  *See Fox*, 572 F. Supp. 3d at 739–40.  The two suits bear a family resemblance but do not raise essentially identical issues.  Claim preclusion is also not applicable, as the instant causes of action do not arise out of the same act or dispute as the earlier causes of action, so that the claims could have been raised in the previous matter.  *See Healy Ranch, Inc.*, 978 N.W.2d at 799.  The facts giving rise to this dispute are Mr. Koehn's actions in litigating the 2024 suit, and those could not have formed the basis for the 2024 suit itself.

C

To the extent there is jurisdiction, dismissal is appropriate on the merits. Dr. Zhang's claims are not legally cognizable or not supported by sufficient factual allegations to be plausible.[9]

As an initial matter, the causes of action do not allege Ms. Ma was personally responsible for Dr. Zhang's injury. She is the only defendant, but the complaint scarcely mentions her conduct, instead focusing on the actions of Mr. Koehn and Judge Sommers. Dr. Zhang argues Ms. Ma is liable on a principal-agent theory: She hired Mr. Koehn, so she is on the hook for the attorney's deceptive litigation tactics. *See* Compl. ¶¶ 23, 187–88; ECF No. 27 at 44, 48. I am aware of no South Dakota case law on point, but other states' precedents hold that

> where a plaintiff seeks to hold a client vicariously liable for the attorney's allegedly intentional tortious conduct, a plaintiff must prove facts demonstrating either that the client specifically directed, controlled, or authorized the attorney's precise method of performing the work or that the client subsequently ratified acts performed in the exercise of the attorney's independent judgment.

*Horwitz v. Holabird & Root*, 816 N.E.2d 272, 279 (Ill. 2004); *see McDevitt v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 160, 171 (D.D.C. 2013) ("[T]he weight of authority provides that a client generally is *not* vicariously liable for its attorney's torts, absent evidence that the client directed, controlled, authorized, or ratified the attorney's allegedly tortious

---

[9] Ms. Ma also raises South Dakota's statutes of limitations and the Rule 9(b) specific fraud pleading requirements. ECF No. 18 at 12–13, 18–19. It is not necessary to reach these arguments.

conduct."); *AKH Co. v. Universal Underwriters Ins. Co.*, 428 F. Supp. 3d 536, 580 & n.187 (D. Kan. 2019); *Fontell v. Hassett*, 870 F. Supp. 2d 395, 412 (D. Md. 2012); *Am. Chem. Soc'y v. Leadscope, Inc.*, 978 N.E.2d 832, 854 (Ohio 2012); *Givens v. Mullikin ex rel. Est. of McElwaney*, 75 S.W.3d 383, 393–94 (Tenn. 2002), *superseded by statute on other grounds as recognized by*, *Willeford v. Klepper*, 597 S.W.3d 454, 462 (Tenn. 2020).  This principle follows from the general rule that lawyers are independent contractors of their clients, and clients are typically not vicariously liable for the intentional torts of independent contractors.  *See Horwitz*, 816 N.E.2d at 278 (finding attorneys presumptively act as independent contractors when they exercise independent professional judgment); *Restatement (Second) of Agency* § 220(2) (A.L.I. 1958) (setting forth factors distinguishing employees from independent contractors); *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 853 (3d Cir. 1996) (explaining that the "most important factor" to determine whether an attorney is an employee or an independent contractor is "the degree of control exercised by the principal"); *see also Blumhardt v. Hartung*, 283 N.W.2d 229, 233 (S.D. 1979) ("Indeed, it is the general rule that an employer . . . is not liable for the torts of an independent contractor committed in the performance of the contracted work."), *superseded by statute on other grounds as recognized by*, *Canal Ins. Co. v. Abraham*, 598 N.W.2d 512, 517 n.5 (S.D. 1999).

Considering the rule's widespread acceptance, I conclude the South Dakota Supreme Court would adopt it, and applying the rule here, Ms. Ma would be liable for Mr. Koehn's tortious litigation conduct only if she directed, controlled, authorized, or ratified it.  Dr. Zhang has not plausibly alleged she did so.  He alleges that she was directly involved

19

in and approved of Mr. Koehn's "methodology," but the only fact supporting that is her belief that Dr. Zhang brought the 2024 action with malicious intent.  Compl. ¶ 23.  That is insufficient to show the direction, control, authorization, or ratification necessary for vicarious liability.  So, under the well-pleaded factual allegations, Ms. Ma would not be liable for Mr. Koehn's intentionally tortious litigation conduct.

Even if Ms. Ma could be liable for Mr. Koehn's actions, Dr. Zhang has not plausibly alleged claims arising from that conduct.  "Although the focus of a Rule 12(b)(6) motion is ordinarily the asserted lack of factual plausibility, Rule 12(b)(6) also permits dismissal of a claim that lacks a recognized or cognizable legal theory . . . ."  *Shepard v. Emps. Mut. Cas. Co.*, 476 F. Supp. 3d 862, 869 (S.D. Iowa 2020) (citing *Couzens v. Donohue*, 854 F.3d 508, 519 (8th Cir. 2017)), *aff'd*, 998 F.3d 330 (8th Cir. 2021).  Counts I and II will be dismissed because they are not cognizable claims, and Counts III and IV will be dismissed for lack of factual plausibility.

Dr. Zhang's first claim is fraud on the court.  Compl. ¶¶ 61–88.  He does not explain the legal basis for this cause of action, but his cited authorities point to attorney discipline proceedings and Rule 60(b), which authorizes a federal district court to relieve a party from a judgment entered in that court.  *See* Fed. R. Civ. P. 60(b)(3) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party . . . ."); *In re McCarthy*, 623 N.E.2d 473, 477 (Mass. 1993) (attorney discipline proceeding).  In rare instances, federal courts have applied Rule 60 to relieve a party from the judgment of another federal court.  *See*

*Demjanjuk v. Petrovsky*, 10 F.3d 338, 356 (6th Cir. 1993) (vacating district court judgment under Rule 60(b)(6) because of prosecutorial misconduct); *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) (reversing district court's grant of Rule 60(b) relief from other district court's judgment). Rule 60(d)(1) contemplates independent actions for fraud on the court, but the Supreme Court holds that "an independent action should be available only to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1988). Dr. Zhang cites no case where a federal court used Rule 60 to provide relief for an erroneous state-court judgment. In that context, "courts have repeatedly held that 'fraud on the court is not an independent cause of action.'" *Great Gulf Corp. v. Graham*, 654 F. Supp. 3d 838, 849 (D. Minn. 2023) (quoting *Hirsi v. ARCH Language Network, Inc.*, No. A18-1076, 2019 WL 1591800, at *9 (Minn. Ct. App. Apr. 15, 2019)); *see Williams v. Apker*, 774 F. Supp. 2d 124, 128 (D.D.C. 2011) ("Rule 60(b), however, only provides a federal district court with subject matter jurisdiction over requests for reconsideration of federal district court decisions; it does not give the court jurisdiction to relieve a party from state court judgments . . . ."). "Rule 60 allows parties to seek relief from judgments obtained by . . . fraud on the court" only if "the defrauded court, which . . . originally rendered the decision, is the court in which the action alleging fraud is brought." *Healy v. Sup. Ct. of S.D.*, No. 4:23-CV-04118-RAL, 2023 WL 8653851, at *4 n.2 (D.S.D. Dec. 14, 2023), *aff'd*, No. 24-1996, 2025 WL 999468 (8th Cir. Apr. 3, 2025) (per curiam). Therefore, Dr. Zhang's "fraud on the court" claim arising from the 2024 state civil litigation is not a legally cognizable independent action that a federal district court can entertain.

Dr. Zhang's nebulous "intentional tort" claim, Count II, fares no better. *See* Compl. ¶¶ 89–100. "Intentional tort" is not a cause of action under Minnesota or South Dakota law; it is a category of claims. "Although pro se complaints must be construed liberally, it is still a plaintiff's burden to identify some 'cognizable legal basis' for their claims." *Henry v. Servion, Inc.*, No. 25-cv-3350 (LMP/DLM), 2025 WL 3145711, at *1 n.3 (D. Minn. Oct. 21, 2025) (quoting *Sailee v. Anoka County*, No. 08-cv-6043 (JMR/JSM), 2009 WL 57032, at *1 (D. Minn. Jan. 7, 2009) (adopting reporting and recommendation)). This cause of action repeats the theory and allegations of Count I, that Mr. Koehn's factual and legal misrepresentations caused the "improper dismissal" of the 2024 suit. *See* Compl. ¶¶ 97–98. Count II will be dismissed for the reasons explained above.

The legal source for Dr. Zhang's abuse-of-process claim is unclear. *Id.* ¶¶ 101–21. It is possible that he presses the cause of action under 42 U.S.C. § 1983, which authorizes private actions to vindicate federal constitutional rights. *See* ECF No. 1 ¶ 4 (alleging federal question jurisdiction under that statute). The Eighth Circuit has not recognized such a claim, *see Fagnan v. City of Lino Lakes*, 745 F.3d 318, 324 n.5 (8th Cir. 2014), but "to the extent such a theory of liability exists, [Dr. Zhang] would still need to demonstrate that any abuse of process deprived him of his constitutional rights," *Cane v. Stevenson*, No. 25-cv-3045 (LMP/LIB), 2026 WL 972947, at *6 (D. Minn. Apr. 10, 2026) (first citing *Cameo Convalescent Ctr., Inc. v. Senn*, 738 F.2d 836, 845 (7th Cir. 1984); then citing *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981); and then citing *Kleiss v. Short*, 805 F. Supp. 726, 727 (S.D. Iowa 1992)). "Only state actors can be held liable under Section 1983." *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001).

An exception exists where a private actor "conspir[es] with state officials to violate a private citizen's rights," and the "key inquiry is whether the private party was a willful participant in the corrupt conspiracy." *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008) (citation modified). To prove a conspiracy under § 1983, "the plaintiff need not show that each participant knew 'the exact limits of the illegal plan'" but must show that "the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *Id.* (citation modified).

> To state a claim against state or private actors, a complaint must include specific facts tending to show a meeting of the minds among the alleged conspirators. Allegations that the parties had an opportunity to communicate or acted in a manner that was consistent with the existence of a conspiracy are insufficient alone to suggest a conspiracy.

*Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 845 (D. Minn. 2021) (citation modified).

Alternatively, Dr. Zhang could be alleging abuse of process under South Dakota or Minnesota law.[10] In South Dakota, "One who uses a legal process whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." *Noble v. Am.*

---

[10] Evaluating abuse of process as a state-law tort claim requires a choice-of-law analysis between Minnesota, the forum state, and South Dakota, where the 2024 litigation at issue occurred. "In a diversity case, a federal court applies the choice of law rules of the forum state." *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997). Courts in Minnesota first consider "whether the choice of one state's law over another's creates an actual conflict." *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn. 1994). There is no conflict here. The tests are relevantly similar, and Dr. Zhang's abuse-of-process claim is dismissal-worthy under either law.

*Nat'l Prop. & Cas. Ins. Co.*, 297 F. Supp. 3d 998, 1006–07 (D.S.D. 2018) (quoting *Miessner v. All Dakota Ins. Assocs., Inc.*, 515 N.W.2d 198, 204 (S.D. 1994)). Notably, "the defendant is not liable if he has done no more than carry the process to its authorized conclusion, even with bad intentions." *Id.* at 1007 (quoting *Miessner*, 515 N.W.2d at 204). In Minnesota, to prove an abuse-of-process claim, the plaintiff must show "the act of using the process to accomplish a result not within the scope of the proceeding in which it was issued," as well as the defendant's "ulterior purpose." *Nygard v. City of Orono*, 39 F.4th 514, 520 (8th Cir. 2022) (citation modified).

Understood either way, the abuse-of-process claim is dismissal-worthy. Construed as a § 1983 claim, and assuming that such a claim is legally cognizable, Count III fails to plausibly allege a constitutional violation. It repeats the allegations that Mr. Koehn misrepresented facts and law in the 2024 proceedings and drafted a proposed order describing Dr. Zhang's claim as frivolous, and Judge Sommers's resulting order reflected Mr. Koehn's position. Compl. ¶¶ 105, 107–10, 117. These actions do not violate the Constitution. Dr. Zhang asserts that Mr. Koehn "used his position as a legal professional to intimidate the pro se plaintiff while openly disregarding court orders," *id.* ¶ 118, but this high-level statement does not allege a constitutional violation. More fundamentally, this § 1983 claim fails because Ms. Ma is not a state actor or "a willful participant in the corrupt conspiracy" in which state actors violated Dr. Zhang's constitutional rights. *White*, 519 F.3d at 816 (8th Cir. 2008). Dr. Zhang has not alleged a "meeting of the minds" occurred between Judge Sommers and Mr. Koehn, let alone between Judge Sommers and Ms. Ma. *Tirado*, 521 F. Supp. 3d at 845. Understood as a state-law claim, the complaint does not

24

allege a legal process used for a purpose outside its design or Ms. Ma's ulterior motive. This cause of action amounts to the claim that Mr. Koehn's legal arguments and factual assertions were wrong, and those errors misled Judge Sommers, who dismissed a meritorious complaint. *See* Compl. ¶¶ 101–05, 108, 111–21.  Even if I could accept a complaint's legal conclusions as true, *see Iqbal*, 556 U.S. at 678, these allegations would not state a claim for abuse of process.  For example, it is not unusual for a judge to adopt an attorney's proposed order.  As to the other allegations, weighing arguments and finding facts is precisely what the legal process is designed to do.  *See Noble*, 297 F. Supp. 3d at 1006.  Judge Sommers's decision to dismiss the 2024 suit fell entirely with the scope of the proceeding.  *See Nygard*, 39 F.4th at 520.  Finally, the complaint says nothing about Ms. Ma or Mr. Koehn acting from ulterior motives.  Her belief that Dr. Zhang brought the 2024 suit "with malicious intent" does not show an ulterior motive, Compl. ¶ 23, and her subsequent actions—moving to dismiss the complaint and seeking attorneys' fees—are appropriate legal responses.

The claim for collusion with a state officer will be dismissed, Compl. ¶¶ 122–76, largely for the reasons explained above. *See White*, 519 F.3d at 816 (providing for a private party's § 1983 liability when they "conspir[e] with state officials to violate a private citizen's rights" (citation modified)).  Dr. Zhang alleges a conspiracy to deprive him of Equal Protection and Due Process, the constitutional rights grounding his claim.  *See* Compl. ¶¶ 136, 181–94.  "To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of

25

the conspiracy; and (3) that the overt act injured the plaintiff." *White*, 519 F.3d at 814. Dr. Zhang has not plausibly alleged that Ms. Ma conspired to deprive him of his constitutional rights because there are no facts supporting a "meeting of the minds" between Ms. Ma, Mr. Koehn, and Judge Sommers, necessary to establish a conspiracy. *Tirado*, 521 F. Supp. 3d at 845. The well-pleaded factual allegations do not establish a conspiracy to violate Dr. Zhang's rights to due process and equal protection. He asserts that Judge Sommers "did not announce the rules and how the proceeding was to be conducted at its first hearing with a pro se litigant as a party," agreed with Ms. Ma's arguments, ignored other facts, "did not permit the pro se plaintiff to explain or cite his own complaint during the dismissal hearing," and "expressed his personal impressions of [a lawyer's] character." Compl. ¶¶ 127–128, 131–32, 138. These do not show that the proceeding was fixed in violation of the Fourteenth Amendment's Due Process Clause. *See DuBose v. Kelly*, 187 F.3d 999, 1004 (8th Cir. 1999) (finding plaintiffs prevailed on that theory over defendant's summary-judgment motion). And last, liberally construing his claim to equal protection as a § 1985(3) conspiracy claim, Dr. Zhang must show "proof of a class-based animus." *Federer v. Gephardt*, 363 F.3d 754, 758 (8th Cir. 2004). He appears to argue that Judge Sommers discriminated against him on the basis of his pro se status. Compl. ¶ 136. Setting aside whether self-representation is a protected class for purposes of a § 1985(3) claim, Dr. Zhang's factual allegations do not show class-based animus.

*

Courts have discretion to decide between a with-prejudice and without-prejudice dismissal. *See Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn.

26

2019).   A dismissal with prejudice is typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. County of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sep. 26, 2013); *see Reinholdson v. Minnesota*, No. 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting report and recommendation), or when the record makes clear that any amendment would be futile, *see Paisley Park*, 361 F. Supp. 3d at 880 n.7.   On the other hand, when a plaintiff's claims "might conceivably be repleaded with success," dismissal without prejudice may be justified.   *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *R. & R. adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019).

Here, to the extent there is jurisdiction, a with-prejudice dismissal is appropriate. Dr. Zhang's claims are frivolous, and amendment would be futile.   The fraud-on-the-court theory is untenable, as explained above (and by Judge Sommers in the 2024 case). "Intentional tort" is not a cognizable cause of action.   Dr. Zhang's § 1983 claims are factually deficient, but his briefing suggests no facts that could be raised in an amended complaint.   *See* ECF No. 27 at 40–42 (arguing the complaint is factually supported). Lastly, Dr. Zhang has not requested an opportunity to amend.   *See generally* D. Minn. LR 15.1(b) (requiring movants to submit a proposed amended complaint alongside a redlined version).   So to the extent the merits are reached, dismissal will be with prejudice.

27

III

Ms. Ma moves for sanctions under Federal Rule of Civil Procedure 11.  ECF No. 29.  That rule provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).[11]  "To constitute a reasonable inquiry, the prefiling investigation must uncover a factual basis for the plaintiff's allegations, as well as a legal basis."  *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003).  In resolving a Rule 11 motion, a district court

---

[11]   A party moving for sanctions under Rule 11 must serve the motion under Rule 5, and must not file the motion "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  Fed. R. Civ. P. 11(c)(2).  Through counsel, Ms. Ma served Dr. Zhang with the sanctions motion and accompanying papers on May 4, 2026.  *See* ECF No. 31 ¶¶ 6–7; ECF No. 31-6; ECF No. 31-7.  Dr. Zhang did not withdraw his complaint, dismiss his claims, or correct the challenged filing.  ECF No. 31 ¶ 12; ECF No. 32 ¶¶ 2–4.  Ms. Ma did not file the motion until June 1, 2026, more than twenty-one days later.  ECF No. 31 ¶¶ 9–11.  Dr. Zhang does not contest that Ms. Ma complied with Rule 11's safe-harbor provision.  *See* ECF No. 37.

is to consider "whether a reasonable and competent attorney would believe in the merit of an argument," *Miller v. Bittner*, 985 F.2d 935, 939 (8th Cir. 1993) (citation modified), and "whether the attorney's [or unrepresented party's] conduct, viewed objectively, manifests either intentional or reckless disregard of [that individual's] duties to the court," *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017) (citation modified). The rule applies to attorneys and unrepresented parties, and the Eighth Circuit has "urge[d] the district courts to assure compliance by pro se litigants with the requirements of Rule 11." *Ginter v. Southern*, 611 F.2d 1226, 1227 n.1 (8th Cir. 1979) (per curiam).

Ms. Ma argues that sanctions are appropriate because (1) *Rooker-Feldman* and res judicata foreclose this litigation, and Dr. Zhang cannot avoid those jurisdictional bars by creatively labeling his causes of action and prayer for relief; (2) Dr. Zhang's fraud-on-the-court theory and its related claims are frivolous; (3) Dr. Zhang's principal-agent arguments are frivolous; (4) the statute of limitations makes his complaint objectively unreasonable; (5) Dr. Zhang failed support his claims against Ms. Ma with facts about her conduct; and (6) the circumstances indicate that Dr. Zhang filed this suit for an improper purpose, in violation of Rule 11(b)(1). ECF No. 30 at 10–21. She seeks reasonable attorneys' fees and costs, as well as a narrow filing restriction. *Id.* at 23–26.

Sanctions are not appropriate on grounds (1), (3), and (4). I am not persuaded by Ms. Ma's preclusion argument, and while I find that *Rooker-Feldman* bars jurisdiction to a degree, the issue is not so clear cut that no reasonable and competent attorney could disagree. *See Miller*, 985 F.2d at 939; *see also Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 806 (8th Cir. 2006) (denying a defendant's sanctions motion where the

29

plaintiff's "attempt to prolong a dispute already litigated in multiple forums [was] hardly worthy of praise, [but] the res judicata and statute of limitations issues [we]re subject to reasonable dispute"). *Rooker-Feldman*'s scope "is sometimes fuzzy on the margins," *In re Athens/Alpha Gas Corp.*, 715 F.3d at 234, and it was not sanctionable to argue Dr. Zhang's position. Similarly, though the clear weight of authority holds that a client is not vicariously liable for a lawyer's tortious litigation conduct unless she directed, controlled, authorized, or ratified it, I am not aware of (and the parties have not presented) binding precedent on that issue. Arguing in that gray area was not sanctionable. And I do not understand statutes of limitations Ms. Ma cites (over personal injury and attorney malpractice) to bar litigation over Mr. Koehn's 2024 conduct. *See* ECF No. 18 at 13.

Grounds (2) and (5) support imposing sanctions. As explained above, the causes of action are frivolous. His "fraud on the court" claim is not an independent cause of action that can be used to collaterally attack a state court's ruling. Though not precluded, the claim was one that a reasonable attorney would not have found meritorious. Similarly, the "intentional tort" cause of action is not legally cognizable, and it just restates the unfounded fraud theory. A reasonable pre-filing inquiry would have revealed that these claims did not have a legal basis. The claims for abuse of process and collusion are manifestly deficient; Dr. Zhang does not plead any facts suggesting Ms. Ma, Mr. Koehn, and Judge Sommers had a "meeting of the minds" or conspired to corrupt the proceedings. If there was a good factual basis for these claims, Dr. Zhang has not identified it.

Relatedly, ground (6) is also reason for sanctions. Filing a frivolous complaint in violation of Rule 11(b)(2) often violates Rule 11(b)(1)'s prohibition on filing a complaint

for an "improper purpose." *See City of St. Louis v. Missouri*, No. 4:25-cv-00498-MTS, 2025 WL 1184164, at \*2 (E.D. Mo. Apr. 23, 2025) (collecting cases). In the 2024 proceedings, Judge Sommers explained the fundamental error in Dr. Zhang's fraud-on-the-court theory. *See* ECF No. 1-3 at 54 ("[I]f there was a fraud perpetrated on the divorce court, the remedy is to go back to the divorce court to point that fraud out and deal with that inside the divorce. The remedy is not to file a new action and collaterally attack[] a valid judgment that remains in effect because you're claiming that was some fraud in that judgment."). So while the prior judgment did not preclude the claims raised here, it notified Dr. Zhang that his legal theory was wrong. Relitigating that same theory, albeit with new facts, violates Rule 11. *Cf. Kountze ex rel. Hitchcock Found. v. Gaines*, 536 F.3d 813, 819 (8th Cir. 2008) ("[A] district court abuses its discretion by refusing to sanction a plaintiff and his counsel under Rule 11 for filing and maintaining a frivolous lawsuit when the plaintiff seeks to relitigate claims he had been denied leave to serve against the same defendant in an earlier lawsuit." (quoting *Pro. Mgmt. Assocs., Inc. v. KPMG LLP*, 345 F.3d 1030, 1033 (8th Cir. 2003) (per curiam))).

The last issue is to determine an appropriate sanction. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991) (noting that courts must impose sanctions for Rule 11 violations, but have discretion over which sanction to impose); *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993) (same). Rule 11 restricts sanctions "to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "In determining the appropriate sanction, the court may consider the wrongdoer's history, experience and ability, the severity of the violation, the degree to

31

which malice or bad faith contributed to the violation, and other factors." *Pope v. Fed. Express Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995) (citation modified). "[T]he primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending." *Kirk Cap. Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994). While courts may award attorneys' fees to prevailing parties, including those incurred for bringing a sanctions motion, Fed. R. Civ. P. 11(c)(2), (4), ordinarily monetary awards are paid to the court, *see* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Courts may also "place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process. These restrictions may be directed to provide limitations or conditions on the filing of future suits." *In re Tyler*, 839 F.2d 1290, 1293 (8th Cir. 1988) (citation omitted) (quoting *People v. Carter*, 678 F. Supp. 1484, 1486 (D. Colo. 1986)). In determining whether to impose a filing restriction, courts consider

> (1) the party's history of litigation, particularly whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had an objectively good faith basis for pursuing the litigation; (3) whether the party has caused needless expense to other parties or has posed an unnecessary burden on the courts; and (4) whether other sanctions would adequately protect the court and other parties.

*Westley v. Bryant*, No. 14-cv-5002 (PJS/BRT), 2015 WL 2242161, at *10 (D. Minn. May 12, 2025). A filing restriction must be narrowly tailored to fit the circumstances it is intended to address. *In re Pointer*, 345 F. App'x 204, 205 (8th Cir. 2009).

Here, the better answer is not to award attorneys' fees or impose a filing restriction, but to give a warning. Dr. Zhang has litigated two frivolous fraud-on-the-court claims, and

32

only one in this District, making his history of meritless litigation much shorter than those of other sanctioned attorneys and parties. *See Welk v. GMAC Mortg., LLC*, 850 F. Supp. 2d 976, 981 (D. Minn. 2012) (noting plaintiff had filed "nearly 30 cases" raising same frivolous legal theory); *Kunzer v. Foster*, No. 24-cv-3726 (LMP/LIB), 2025 WL 1135110, at *2 (D. Minn. Apr. 17, 2025) (describing "unceasing flurry of frivolous actions in state and federal court" for twenty-five years). Dr. Zhang's pro se status mitigates the severity of his violation. *See Harris v. Heinrich*, 919 F.2d 1515, 1516 (11th Cir. 1990) (per curiam) ("Although Rule 11 applies to *pro se* plaintiffs, the court must take into account a plaintiff's *pro se* status when it determines whether the filing was reasonable."). As to the proposed filing restriction, I am not willing to prohibit Dr. Zhang from filing new actions without leave of the court "against Ms. Ma arising out of the parties' marriage, divorce, divorce decree, alimony, alleged fraud on the court, South Dakota divorce proceedings, South Dakota appellate proceedings, or alleged misconduct by counsel or judicial officers in those proceedings." ECF No. 30 at 24. That restriction is too broad, especially considering Dr. Zhang's history of litigating claims related to, but not identical with, his initial divorce case. Put another way, if Dr. Zhang files another suit arising out of his divorce proceedings, it seems likely that it would involve a different set of operative facts from the 2011 case— just as this suit alleged Mr. Koehn's misconduct in the 2024 case.[12] I will not prejudge

---

[12] Mr. Kelley is concerned that Dr. Zhang will sue him for representing Ms. Ma. *See* ECF No. 30 at 19 (anticipating "future claims against undersigned counsel for defending against this lawsuit"). That concern is reasonable, given Dr. Zhang's litigation history and accusations against Mr. Kelley in this proceeding. *See* ECF No. 37 *passim* (repeatedly describing Mr. Kelley's conduct as sanctionable). I will not order sanctions against Mr. Kelley because there is no Rule 11 motion against him, and—more importantly—because

those causes of action.  If Dr. Zhang intends to relitigate issues raised in the South Dakota courts or here, I trust that *Rooker-Feldman* and preclusion will screen out many patently frivolous claims.  Considering Dr. Zhang's pro se status, his relatively brief history of frivolous litigation, his partial success on preclusion and jurisdictional issues, the appropriate sanction is a formal warning.  *See Am. State Bank v. Pace*, 124 F.R.D. 641, 649 (D. Neb. 1987) (issuing warning where mitigating circumstances made the action "not extremely frivolous").  Before Dr. Zhang files a suit in federal court, he must conduct a pre-filing investigation under Rule 11.  If he files another lawsuit in this District and fails to comply with Rule 11, he is warned that the court may consider imposing a graduated sanction, including a filing restriction and a monetary award to the opposing party or the court.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant Ling Ma's Motion to Dismiss [ECF No. 16] is **GRANTED**.

2. Plaintiff Zhi Gang Zhang's Motion to Oppose Dismissal Motion [ECF No. 26] is **DENIED**.

3. Plaintiff Zhi Gang Zhang's Complaint [ECF No. 1-1] is **DISMISSED WITHOUT PREJUDICE** to the extent it seeks to effectively vacate a state-court

---

I have carefully read the briefing and find all of Dr. Zhang's accusations against Mr. Kelley to be entirely untrue.

judgment.   To the extent it seeks other relief, the Complaint is **DISMISSED WITH PREJUDICE**.

4.      Defendant Ling Ma's Motion for Sanctions [ECF No. 29] is **GRANTED** as follows: Plaintiff Zhi Gang Zhang is formally cautioned to abide by Federal Rule of Civil Procedure 11, and warned that further violations of that rule may result in a graduated sanction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 8, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
Chief Judge, United States District Court